**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER MICHAEL
HELTON,

Defendant-Appellant.

No. 06-5163

(N.D. Oklahoma)

(D.C. No. 06-CR-45-HDC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **SEYMOUR**, and **EBEL**, Circuit Judges.[**]

In May 2006, Christopher Michael Helton pleaded guilty to being a felon in

possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g) and

924(a). Mr. Helton entered into a plea agreement after the district court denied

his motion to suppress the evidence that served as the basis of this conviction. He

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

reserved the right to raise this appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm.

## I. BACKGROUND

A. FACTS

The district court found the following with regard to Mr. Helton's arrest:

The District Court of Tulsa County issued a felony arrest warrant for Lisa Spiegal.[1] On January 9, 2006, Duane Guthrie, a bail bond recovery agent, contacted Tulsa Police Officer Mark Kennedy and related that Guthrie had seen Ms. Spiegal exit a dark Ford truck and enter the residence at 23 North Louisville Avenue in Tulsa. Kennedy knew Guthrie, had relied on information Guthrie gave him in the past, and had never known Guthrie to give unreliable information. Kennedy, a member of the Northern Oklahoma Fugitive Task Force, had a file in his vehicle that contained Spiegal's picture, descriptive information, and a copy of her outstanding warrant. . . . At the scene, Guthrie identified a dark Ford truck with tinted windows in the driveway of the residence as the same truck from which Spiegal exited. Kennedy surveilled the residence with binoculars. Kennedy saw a woman whom he believed to be Spiegal sitting on the passenger side of the dark Ford truck with tinted windows.

Defendant Helton exited the residence, entered the dark Ford truck, and drove away with the woman. Officer Kennedy followed the truck in an unmarked vehicle and around the 800 block of North Louisville turned on his emergency equipment. Helton did not immediately stop, so Kennedy briefly turned on his vehicle's siren. Helton turned into the driveway of 802 North Louisville, exited the truck, and walked toward the residence. Kennedy exited his vehicle, observed that Helton appeared nervous, and asked Helton to raise his hands. Helton did not comply and continued walking toward the residence, his right hand in

---

[1] Ms. Spiegel is also sometimes referred to as Ms. Lisa Batt, which is apparently an alias. We also note that the district court spells Ms. Spiegel's name with an "a" but the government and Mr. Helton spell it with an "e" (Spiegel). It is not clear which is correct.

his pocket. Kennedy again asked Helton to raise his hands. Helton continued to walk away with his left hand raised. Using his right hand, Helton removed a .32 caliber handgun and a glass smoking pipe from his waistband and threw both into a bush. Helton then raised both hands and at Kennedy's command laid on the ground.

After arresting Helton, Kennedy determined that the truck's passenger was *not* Lisa Spiegal. . . .

Dist. Ct. Order at 1-2 (emphasis supplied) (internal quotation marks omitted).

B.   DISTRICT COURT DECISION AND ISSUES ON APPEAL

The district court concluded that both the initial traffic stop and the detention of Mr. Helton were reasonable under the Fourth Amendment. The court observed that Mr. Guthrie was a proven and reliable informant and that Officer Kennedy made every effort to make an accurate identification. Thus, under the totality of the circumstances Officer Kennedy's reliance on the warrant for Ms. Spiegel's arrest was both objectively reasonable and in good faith. Therefore, the fact that he was ultimately mistaken about the passenger's identity did not invalidate the stop.

The district court also found that Mr. Helton was subject to two separate seizures. The first was the traffic stop. However, the district court concluded that the initial seizure terminated "[w]hen [Mr.] Helton ignored Officer Kennedy and walked away." Id. at 3. According to the district court, the second seizure occurred when Mr. Helton was placed under arrest after Officer Kennedy saw him fling a pistol and a glass smoking device into the bushes, thereby creating

3

probable cause. Alternatively, the court found that, even if the entire interaction constituted a seizure, "[c]onsiderations of officer safety" rendered it reasonable under the Fourth Amendment. Id. at 4.

Mr. Helton reserved the right to appeal (1) whether the initial stop of his vehicle was supported by reasonable suspicion; and (2) whether he continued to be seized under the Fourth Amendment after he began to walk away from the scene of the stop.

## II. DISCUSSION

A.     STANDARD OF REVIEW

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004).

B.     THE TRAFFIC STOP

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Because it is a seizure for the purposes of the Fourth Amendment, a traffic stop

4

must be reasonable. United States v. Taverna, 348 F.3d 873, 877 (10th Cir. 2003). In order to assess the reasonableness of a traffic stop, we look to the principles governing investigative detentions. United States v. Guerrero-Espinoza, 462 F.3d 1302, 1307 (10th Cir. 2006). This court examines the reasonableness of investigative detention under totality of the circumstances from the perspective of a reasonable officer. United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003).

It is important to note that the mere fact that Mr. Helton's passenger was not the individual named in the warrant does not render the initial stop invalid. Hill v. California, 401 U.S. 797, 804 (1971) (upholding the validity of an arrest based on a misidentification of the individual in the warrant because "[s]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time."). Instead, the stop was valid if Officer Kennedy reasonably relied on that warrant under the totality of the circumstances.

Mr. Helton contends that Officer Kennedy did not have reasonable suspicion to make the initial traffic stop, in part, because he could not say with certainty that Ms. Spiegel was not still in the house. In addition, Mr. Helton emphasizes that Ms. Spiegel's Department of Corrections photos contain an ethnic description classifying Ms. Spiegel as Native American, and the passenger

5

in Mr. Helton's car was caucasian.  He also makes much of the fact that Officer Kennedy used binoculars to observe the passenger of Mr. Helton's car.

Despite Mr. Helton's contentions, we agree with the district court, which concluded,

> a reliable and disinterested source[] informed Officer Kennedy that he could find Lisa Spiegal, a person wanted on an outstanding felony warrant, at a particular location and that she had been the passenger in a particular vehicle.  Officer Kennedy, equipped with binoculars, an arrest warrant, a photograph, and the identifying characteristics of Lisa Spiegal, believed in good faith that the passenger of the vehicle was Lisa Spiegal.

Dist. Ct. Order at 4.  In short, Officer Kennedy's identification of the passenger as Ms. Spiegel and his decision to stop the vehicle on the basis of the arrest warrant were reasonable.

Mr. Helton's argument that Officer Kennedy's use of binoculars undermines the reasonability of his reliance on the warrant is unpersuasive.  The implication of Mr. Helton's contention is that if the officer had to use binoculars, then he was not close enough to the suspect.  However, there was no testimony that Officer Kennedy was unable to see the suspect without binoculars; rather, Officer Kennedy used binoculars to get a closer look and verify the tip.

Mr. Helton's contentions about Ms. Spiegel's ethnicity are similarly unavailing.  The mere fact that Ms. Spiegel's department of corrections documents identify her as Native American does not mean that it was unreasonable for Officer Kennedy to conclude she looked caucasian.  While the

6

state may feel the need to classify people into one ethnicity another, the reality is that ethnic identity and appearance frequently defy rigid categorization. Many people who identify themselves as American Indian may not appear to be full-blood. In fact, Officer Kennedy's experience bears out the truth of this observation: he testified at the suppression hearing that his wife is half Native American, but that she appears caucasian. Furthermore, it is important to note that whether Ms. Spiegel's warrant picture and description sufficiently matched the passenger are questions of fact that this court should not overturn absent clear and convincing evidence to the contrary. Mr. Helton has presented no evidence that would allow us to disturb the district court's finding.

Finally, Mr. Helton's observation that Mr. Guthrie never informed Officer Kennedy that Ms. Spiegel was leaving the house is frivolous. Nothing indicates that the informant was in a position to relay such information; nor does the absence of this affirmative declaration on Mr. Guthrie's part give us grounds to overturn the district court's conclusion that Officer Kennedy reasonably believed that the woman in Mr. Helton's vehicle was Ms. Spiegel.

C.    SEIZURE OF MR. HELTON FOLLOWING THE TRAFFIC STOP

The government does not quarrel with Mr. Helton's contention that he was seized within the meaning of the Fourth Amendment after he exited the vehicle. Instead, the government maintains that Officer Kennedy's reasonable safety concerns justified the seizure. Accepting the government's concession for the

purposes of this order, we focus only on whether it was reasonable for Officer Kennedy to order Mr. Helton to remain in the vehicle and, once he exited, to order him to stop walking away and put his hands in the air.

The essence of the officer safety inquiry is whether the officer's actions were reasonable in light of the potential threat. United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994). We evaluate Officer Kennedy's command to Mr. Helton in light of the totality of the circumstances. United States v. Williams, 271 F.3d 1262, 1268 (10th Cir. 2001) ("[W]hether an investigative detention is supported by an objectively reasonable suspicion of illegal activity turns on our review of the totality of the circumstances.").

In this case, the totality of the circumstances included a traffic stop on the basis of an arrest warrant for felony drug charges and Mr. Helton's unusual decision to walk away from Officer Kennedy with his right hand concealed. The Supreme Court has observed that an officer faces "inordinate risk . . . as he approaches a person seated in an automobile." Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977). "Indeed, it appears that a significant percentage of murders of police officers occurs when the officers are making traffic stops." Id. (internal quotation marks omitted). Moreover, in executing an arrest based on probable cause, officers may temporarily detain a bystander if his or her relationship with the arrestee is unclear and if reasonable concerns for officer safety justify doing so. Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995).

8

Taking into account the totality of the circumstances, we agree with the district court that

> it was reasonable for Officer Kennedy to order Helton to return to the truck once Helton exited. Helton appeared nervous and his right hand was obscured from Officer Kennedy's view. Helton's actions created an objectively reasonable apprehension for an officer's safety during a traffic stop and therefore an order to return to the car was reasonable under the Fourth Amendment.

Dist. Ct. Order at 4. Notwithstanding Mr. Helton's attorney's personal guarantee that Mr. Helton was merely disposing of his firearm in the bushes, it was clearly reasonable for Officer Kennedy to believe that Mr. Helton's temporary detention was necessary to ensure his own safety.

### III. CONCLUSION

Accordingly, we AFFIRM the district court's denial of Mr. Helton's motion to suppress.

Entered for the Court,

Robert H. Henry
Circuit Judge

9