(244 P.3d 693)
No. 102,071

STATE OF KANSAS, *Appellee*, v. REX REISS, *Appellant*.

Opinion filed
December 17, 2010.

*Matthew J. Edge*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Steve Six*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON, J., and BUKATY, S.J.

LEBEN, J.: Rex Reiss had the misfortune to be driving one of two vehicles directly behind a blue pickup that had no lights on at about 1 o'clock in the morning. When an officer pulled behind the three vehicles to stop the one with no lights on, Reiss stopped directly behind the blue pickup. When the officer pulled his car right behind Reiss (there was no room between Reiss' truck and the blue pickup), Reiss immediately got out of the truck and began walking toward the police car, vehemently questioning what he'd done wrong.

The officer, Ricky Ritter, told Reiss to get back in his truck. Reiss kept walking toward the officer, who continued to order him back to the truck. Eventually, Reiss complied.

Reiss contends that when the officer told him to get back into his truck, the officer violated Reiss' constitutional right to be free from unreasonable searches or seizures. And if that wasn't enough for a constitutional violation, Reiss contends that the officer surely violated his rights when—after Reiss had returned to his truck— the officer came up, asked why Reiss had gotten out of his truck,

and then asked for Reiss' license and registration. During that interchange, the officer began to suspect that Reiss had been driving drunk based on Reiss' slurred and mumbling speech and his blood-shot and watery eyes. Reiss failed field-sobriety tests, refused to take a breath test that would have determined his blood-alcohol level, and was eventually convicted of DUI.

The district court held that Reiss had not been seized, even when the officer ordered Reiss back to his truck, because the officer was merely taking normal steps that a reasonable and cautious officer would take for safety when a single officer was on hand and more than one vehicle had stopped. After getting Reiss back in his truck, the district court concluded that the officer had reasonably investigated the unusual circumstance of someone jumping out of the truck and coming toward the officer. Based on these conclusions, the district court denied the defendant's motion to suppress the evidence against him based on the defendant's claim that the officer had violated the defendant's constitutional rights.

When a defendant files a motion to suppress evidence based on a claim of unlawful conduct by law-enforcement officers, the State has the burden of proof to show that the officers acted lawfully. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006). On appeal, we must accept the district court's factual findings when substantial evidence supports them. We then independently decide the legal question at hand without any required deference to the district court. *State v. Morlock*, 289 Kan. 980, Syl. ¶ 1, 218 P.3d 801 (2009).

Because the Fourth Amendment forbids unreasonable searches and seizures, the central question in all Fourth Amendment cases is what is reasonable. *State v. Barriger*, 44 Kan. App. 2d 648, 651, 239 P.3d 1290 (2010). Further, because the ultimate test is reasonableness, usually no single factor is determinative; the court must instead consider all of the facts in the case before it. See *State v. Thompson*, 284 Kan. 763, Syl. ¶ 20, 166 P.3d 1015 (2007); *Barriger*, 44 Kan. App. 2d 653.

The application of the somewhat subjective test of reasonableness is made easier in most cases because the United States Supreme Court and the Kansas Supreme Court have developed different standards to be applied in the various situations that

normally arise. In a voluntary encounter between a citizen and a police officer, the officer is free to ask questions even in the absence of any suspicion the citizen is up to no good. See *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010). But to stop a person traveling on the roadway, even briefly for the purpose of investigation (an "investigatory detention"), the officer must have reasonable suspicion that something's amiss, meaning an objective and specific basis for believing that the person being detained is involved in criminal activity. See *State v. Pollman*, 286 Kan. 881, Syl. ¶¶ 3-5, 190 P.3d 234 (2008). And to arrest someone, the officer must meet an even higher standard: probable cause, which exists when a person of reasonable caution could conclude from the known facts that an offense has been or is being committed. *State v. Fewell*, 286 Kan. 370, Syl. ¶ 4, 184 P.3d 903 (2008); *Barriger*, 44 Kan. App. 2d 649.

So the first question we must consider is whether Reiss was seized at all. If not, then it was a voluntary encounter, so the officer was free to ask him questions or for identification papers even in the absence of any indication that Reiss had done anything wrong. But this question is not as simple as it might seem. The officer didn't intend to pull Reiss' truck over; the officer wanted only to stop the truck in front of Reiss, which had no lights on in the middle of the night. Does it matter that the officer stopped Reiss only inadvertently? And even if it does matter, did the officer seize Reiss for Fourth Amendment purposes when he ordered Reiss back to his truck, approached to ask a question, and requested Reiss' license to identify him?

The parties have not cited to any appellate decisions discussing whether a person inadvertently stopped by police has been seized, and we have not found a Kansas case that does so. That issue, however, has been discussed extensively in a recent decision of the United States Court of Appeals for the Ninth Circuit, *United States v. Al Nasser*, 555 F.3d 722, 725-32 (9th Cir. 2009). The Ninth Circuit concluded that a driver was not seized—and therefore no Fourth Amendment violation had occurred—when the driver stopped his vehicle because of police activity but the officers did not intend for that driver to stop. 555 F.3d at 731-32.

The parties essentially skipped over this first question in their appellate briefs. Reiss simply contends that whether or not he was seized when he first pulled over, the encounter became a seizure when Officer Ritter ordered Reiss to return to his truck. We agree with Reiss on this point. A seizure occurs when there is a show of authority by the officer that would communicate to a reasonable person that he or she is not free to leave and that person submits to the show of authority. *Brendlin v. California,* 551 U.S. 249, 254-55, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007); *State v. Morris,* 276 Kan. 11, Syl. ¶ 5, 72 P.3d 570 (2003). Officer Ritter's forceful commands led Reiss to return to his truck. Because Reiss was clearly seized at that point and no incriminating evidence was obtained before then, we need not determine whether he had been seized when he initially pulled over, even though the officer hadn't intended to stop him.

Reiss contends that since we concluded that Reiss was seized for Fourth Amendment purposes, the evidence resulting from that seizure must be suppressed. In Reiss' view, he was detained at a time when the officer admits he had no reasonable suspicion that Reiss had broken any laws. Reiss argues that a detention without reasonable suspicion necessarily violates the Fourth Amendment.

But there are situations—based on concerns of officer safety and the safety of the public—in which a person *may* be detained without reasonable suspicion of wrongdoing. The United States Supreme Court has held in two similar situations that concerns for public or officer safety allow for some intrusion on the liberty of those who simply find themselves near an otherwise-authorized law-enforcement action; such an intrusion does not violate the Fourth Amendment.

First, an officer stops a car properly when he or she has a reasonable suspicion that the driver committed a traffic violation; the passengers are usually not suspected of any wrongdoing. But the United States Supreme Court has held that passengers may routinely be asked to step out of a stopped car based on considerations of officer safety. *Maryland v. Wilson,* 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997). That's so even though the passengers, like the driver, have been seized. *Brendlin,* 551 U.S. at 257-59.

And in most cases, of course, there is no reason to suspect any wrongdoing by the passengers. But no suspicion that a passenger poses a safety risk is needed to ask that passenger to step out of the car under *Wilson*. 519 U.S. at 414-15. Lower courts have concluded that an officer also may require a passenger who has gotten out of a vehicle to get back in it based on the officer's need to control the scene of a traffic stop to keep it safe for officers and the public. See, *e.g.*, *United States v. Sanders*, 510 F.3d 788, 789-91 (8th Cir. 2007); *United States v. Williams*, 419 F.3d 1029, 1031-34 (9th Cir. 2005); *United States v. Helton*, 232 Fed. Appx. 747, 751 (10th Cir. 2007) (unpublished opinion).

Second, when officers execute a search warrant at a private residence, they may detain persons found there for a reasonable time based solely on concerns of officer safety. Thus, in *Los Angeles County v. Rettele*, 550 U.S. 609, 127 S. Ct. 1989, 167 L. Ed. 2d 974 (2007), the Court held that officers did not violate the Fourth Amendment when they searched a home, ordered two residents out of bed, and held them standing naked and at gunpoint for a minute or two while officers made sure the home was secured— even though the naked residents were of a different race than the criminal suspects and officers had no reason to suspect them of wrongdoing. As it turned out, the suspects had moved out of the home 3 months earlier, and the residents were innocent bystanders. Their Fourth Amendment rights were not violated because the officers acted out of reasonable concern for their own safety. See also *Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) (based in part on concern for officer safety, officers may detain occupants of a residence while executing a search warrant for contraband that may be found there).

The encounter between Reiss and Officer Ritter is analogous to these other situations in which a seizure is reasonable and thus does not violate the Fourth Amendment. Officer Ritter had made a traffic stop in which three vehicles had pulled over, and at least two remained on the scene. At least one vehicle had both a driver and a passenger. It was late at night, and the officer was outnumbered by those he had stopped. Moreover, the officer was reasonably concerned for his safety. Ritter testified that he called for

backup before approaching Reiss' truck because of Ritter's concern after Reiss initially got out of the truck and came towards the officer. Ritter could not approach the truck he had intended to stop—which was in front of Reiss' truck—without turning his back to Reiss; Ritter testified that he was not willing to do that for safety reasons.

Reiss contends that the first thing the officer should have done was to tell Reiss that he was free to leave. But we do not believe that courts should so narrowly circumscribe the actions that an officer can take to protect himself while facing the types of unexpected, evolving situations that occur during traffic stops. Had Officer Ritter told Reiss he was free to leave and then stepped up to the first vehicle, Reiss would still have been behind the officer, and Reiss had appeared quite angry at being stopped only a few moments before. In this situation, it was reasonable for the officer first to have a sufficient conversation with Reiss so that the officer could determine whether Reiss might still be a threat of any kind during the intended traffic stop of the driver of the first vehicle.

The United States Supreme Court has noted that a significant percentage of the murders of police officers occur during traffic stops. *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). Thus, in dealing with the rights of passengers—whom officers generally are not attempting to seize—the Court has balanced the public interest of preserving the safety of officers and others against the intrusion on the liberty interest of the person seized. *Wilson*, 519 U.S. at 411-15. The risk to officer safety, especially after Reiss had come angrily out of his truck, was based on actual circumstances at this traffic stop, not merely the inherent risks of such stops. As in *Wilson*, there were more people stopped than a single officer could carefully watch. Balanced against this safety concern, the intrusion on Reiss' liberty was minimal. Like the passengers in the traffic stop at issue in *Wilson*, 519 U.S. at 413-15, once Reiss initially pulled over, he had already been stopped. And as in *Wilson*, the officer's order for Reiss to return to his truck was only a minimal intrusion while the officer briefly ensured that he presented no threat. See *Wilson*, 519 U.S. at 415.

We conclude that the balance of these interests weighs strongly in favor of officer safety; the officer's actions were reasonable and thus did not violate the Fourth Amendment. As the Court noted in *Brendlin* with respect to passengers, "It is . . . reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." 551 U.S. at 258. On the facts of Reiss' case, he was in the same position as a passenger who has been stopped along with a driver but with no reasonable suspicion of wrongdoing by the passenger.

As we noted previously, the district court concluded that Reiss had not been seized or detained, a legal conclusion we have not accepted. But the district judge generally accepted the testimony of Officer Ritter over conflicting testimony of Reiss: "I find that the officer's testimony is more credible than the other gentleman's as far as . . . who did what and this kind of thing." In addition, the district court made specific factual findings about the officer-safety issues we have discussed. The court found that three vehicles had pulled over late at night, creating a situation where the officer might want to call for backup, and that Reiss' action of immediately getting out of his truck was unusual behavior. Although the district court did not make other factual findings specifically related to the questions before us, neither side asked for additional findings. In such a case, we presume that the district court made the factual findings necessary to support its decision—denial of the motion to suppress. *State v. Gaither*, 283 Kan. 671, 686, 156 P.3d 602 (2007). The officer's testimony, which was generally accepted by the district court, provides sufficient evidence to conclude that the officer's actions here were reasonable.

Officer Ritter testified that he asked for backup while Reiss was outside of his truck coming toward the officer. Ritter testified that he did not proceed to approach the lead truck—the one he had intended to stop—until backup arrived. Ritter said he was "concerned on what [Reiss'] purpose was" when Reiss approached the officer, and this caused the officer to proceed cautiously. When Ritter approached Reiss' truck, Ritter asked why Reiss had gotten out of his truck and for identification rather than simply telling

Reiss he was free to leave. On these facts, however, we see nothing unreasonable about that. Given the aggressive approach Reiss had taken at the scene, Ritter was properly concerned about his safety and asking for identification in this circumstance was itself only a minimal intrusion. See *Florida v. Bostick*, 501 U.S. 429, 434-35, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir.), *cert. denied* 552 U.S. 1031 (2007). Ritter testified that he began to smell alcohol and to notice slurring speech almost immediately after engaging Reiss in brief conversation. Very little time elapsed from when Ritter approached Reiss to when Ritter had reason to investigate whether Reiss had been driving under the influence of alcohol.

In sum, the officer acted in a reasonable manner, which did not violate the Fourth Amendment's prohibition on unreasonable seizures. We therefore affirm the district court's judgment.