NOT DESIGNATED FOR PUBLICATION

No. 128,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JESSE SPEAR,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed February 20, 2026. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ashley R. Iverson*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.


PER CURIAM:  After coming upon a late-night single-car accident, a state trooper suspected the driver, Jesse Spear, was under the influence of alcohol, but due to high winds the trooper asked Spear to accompany him to a nearby law enforcement center for sobriety testing. Eventually Spear was arrested for driving under the influence (DUI) and the Kansas Department of Revenue (KDOR) administratively suspended his driving privileges. The district court upheld the administrative suspension. Spear now appeals, arguing he was unlawfully transported to the law enforcement center to conduct the DUI investigation. Because we find the officer had probable cause to believe Spear was

driving under the influence of alcohol before he was transported, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Around midnight on April 23, 2022, Trooper Steve Sneath of the Kansas Highway Patrol came upon a single-vehicle accident near Kanopolis while patrolling. He observed skid marks across the roadway, then used his spotlight to follow the tracks to discover a vehicle that had travelled into an embankment before vaulting over a fence into a nearby pasture. Through the open driver's side door, Trooper Sneath could see the sole occupant of the vehicle—later identified as Spear—fumbling around inside. Trooper Sneath alerted dispatch and called for EMS, then approached the vehicle. He assisted Spear with exiting the vehicle and had him lie down on the ground until EMS could arrive to assess any injuries.

While speaking with Spear to "initially make sure he was okay," Trooper Sneath noticed Spear's speech was "heavily-slurred," prompting the trooper to ask if Spear had been drinking. Trooper Sneath looked in Spear's vehicle but saw "no alcohol per se" inside. According to the trooper, while still at the scene of the accident, Spear eventually stated he had consumed "Everclear . . . mix[ed] with something else." Trooper Sneath said that

> "after the EMS people arrived, [a] distinct odor of alcohol was coming from his person outside the vehicle, in the high winds even—still, I made sure I stood on the side downwind of him. I—I elected, due to the high—high winds, to leave the scene, after he'd been cleared medically, to further my investigation in this DUI."

Trooper Sneath asked Spear to "voluntarily leave" and Spear agreed, so the trooper transported him to the Ellsworth County Sheriff's Department. During the drive, Spear sat in the front seat of the patrol vehicle and was not handcuffed. Spear also used his

2

cellphone to call his brother at one point. After arriving at the station, Trooper Sneath parked his vehicle outside and opened the garage door. He had Spear exit the vehicle and walk inside the garage "where it was out of the wind." Trooper Sneath said he "[l]eft the door open. It wasn't like we were stuck in there."

Trooper Sneath then conducted standard field sobriety testing, during which Spear struggled, including a failure to stay on the line given to him and inability to stand up straight. After the field sobriety testing, Trooper Sneath conducted a preliminary breath test, the results of which were later excluded based on a lack of foundation. Trooper Sneath then arrested Spear for driving under the influence and gave *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Trooper Sneath read and provided a copy of the DC-70 Implied Consent Advisory to Spear and asked if he would provide a blood sample. Spear agreed to provide the sample, the results of which revealed Spear had a blood alcohol concentration of 0.17 grams of alcohol per 100 mL of blood.

The KDOR then administratively suspended Spear's driving privileges based on a chemical test failure, which was affirmed by an administrative order issued on November 22, 2022. The hearing officer distinguished the facts from those in *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 807-08, 172 P.3d 1205 (2007), in which this court determined that an officer lacked probable cause to justify "effectively" arresting the defendant at the scene of a traffic stop by transporting him to the nearby sheriff's office in handcuffs to further investigate a DUI. The hearing officer explained that reasonable grounds existed here because of the "accident, odor, admission, [and] slurred speech before being taken from scene."

Spear petitioned for review with the district court, arguing primarily that "[t]he officer lacked reasonable grounds to request testing under the Kansas Implied Consent Law," and raising several sub-issues. The sub-issue most relevant to this appeal was that

3

"[t]he officer violated plaintiff's rights by transporting defendant to the law enforcement center to conduct the DUI investigation." Spear also argued that Trooper Sneath conducted illegal and improper searches of his vehicle and person, and that Trooper Sneath lacked reasonable grounds to request testing under the totality of the circumstances.

The parties agreed to submit the case to the district court based solely on the transcript of a suppression hearing that had been held in Spear's criminal DUI case, Ellsworth County Case No. 2022-TR-1248. At that hearing, Spear argued he was effectively arrested without probable cause when Trooper Sneath transported him to the law enforcement center to conduct field sobriety testing, again relying on *Wonderly*. The court declined to overturn the suspension of Spear's driving privileges, stating that it agreed with the hearing officer's previous ruling that Trooper Sneath had reasonable grounds based on Spear's admission to drinking, slurred speech, and odor of alcohol before the transportation occurred. But the court added that the fact of the accident occurring showed Spear was unable to safely operate a motor vehicle and that he was seen fumbling inside the vehicle.

Spear appeals.

ANALYSIS

*The district court did not err in upholding the KDOR's suspension of Spear's driving privileges.*

Spear argues in this appeal, as he did below, that the administrative suspension of his driving privileges must be set aside because he was unlawfully transported to the Ellsworth County Sheriff's Department so that Trooper Sneath could conduct a DUI investigation. KDOR asks us to affirm, arguing the district court correctly found that

reasonable grounds existed under the totality of the circumstances to arrest Spear for DUI based on several signs of impairment following the accident.+

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act, K.S.A. 77-601 et seq. K.S.A. 8-259(a). As the party claiming error, Spear bears the burden of proving the invalidity of the agency action. K.S.A. 77-621(a)(1); K.S.A. 8-1020(q).

Appellate courts review a district court's factual findings in driver's license suspension cases for substantial competent evidence. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019). The district court's legal conclusions derived from those factual findings are reviewed de novo. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). "Substantial competent evidence is '"evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."'" *Creecy*, 310 Kan. at 469. Appellate courts must not reweigh evidence but must determine whether the record supports the district court's findings. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171-72, 473 P.3d 869 (2020). Resolving this appeal also requires statutory interpretation, which presents a question of law subject to unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022).

Under K.S.A. 8-1001(b)(1) of the Kansas Implied Consent Law:

> "One or more tests may be required of a person when, at the time of the request, a
> law enforcement officer has probable cause to believe the person has committed a
> violation of K.S.A. 8-1567(a), and amendments thereto, or to believe the person was
> driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments
> thereto, while having alcohol or other drugs in such person's system, or to believe the
> person is under the age of 21 years and was operating or attempting to operate a vehicle
> while having alcohol or other drugs in such person's system; and one of the following

conditions exists:  (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death."

Prior versions of this statute used "reasonable grounds" in place of the current language requiring "probable cause," but the Kansas Supreme Court has long equated those standards for purposes of requiring licensees to submit to a test under K.S.A. 8-1001. See, e.g., K.S.A. 2017 Supp. 8-1001(b)(1) (requiring a law enforcement officer to possess "reasonable grounds" that the licensee was driving under the influence); *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, Syl. ¶ 3, 447 P.3d 347 (2019) ("Kansas courts evaluate reasonable grounds by looking to probable cause standards."); *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010) ("This court has found the term 'reasonable grounds' synonymous in meaning with 'probable cause.'").

When reviewing for reasonable grounds, the Kansas Supreme Court has said such a determination "involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion—whether reasonable grounds existed—independently, while deferring to the district court's factual findings." *Casper*, 309 Kan. at 1213. "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *Rosendahl*, 310 Kan. 474, Syl. ¶ 3. And whether probable cause exists is determined by evaluating the totality of the circumstances, the information, and the fair inferences from it known to the officer at the time. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

Although these standards are synonymous, it is important to clarify that Spear's appeal concerns the constitutionality of the encounter in this case, not specifically whether Trooper Sneath had statutory authority under K.S.A. 8-1001(b)(1) to request

6

testing. See *Smith*, 291 Kan. at 513-14 (acknowledging reasonable grounds to request testing is a separate determination from probable cause required to make an arrest). As Spear notes, Kansas law allows a court to set aside an administrative suspension of a driver's license. See K.S.A. 8-1020(p) (authorizing courts to set aside a driver's license suspension order based on an unlawful encounter); *Jarvis*, 312 Kan. at 170. Stated another way, Spear only asks us to determine whether the transportation in this case constituted an unlawful arrest.

To that end, Spear contends the suspension of his driving privileges must be set aside because "[i]t is clearly established under Kansas law" that it is unlawful to transport an individual to a law enforcement center before a formal arrest. In other words, he relies on an "initial presumption" that the act of transporting an individual to a law enforcement center to conduct field sobriety testing automatically converts the encounter into an unlawful arrest.

Contrary to Spear's point, such a categorical rule would run counter to the notion that "whether a seizure and an arrest has occurred is based on what a reasonable person would believe under the *totality of the circumstances* surrounding the incident." (Emphasis added.) *State v. Hill*, 281 Kan. 136, 145, 130 P.3d 1 (2006). Our court recognized as much in *State v. Barriger*, 44 Kan. App. 2d 648, 239 P.3d 1290 (2010), which Spear briefly references in support of the proposition that the transport that occurred here, "if voluntary, would have been lawful" if he were taken to a more "neutral location."

In *Barriger*, the defendant appealed his DUI conviction by challenging his transportation from a traffic stop to a parking lot for field sobriety testing. When upholding the DUI conviction, our court found it permissible to move a defendant "a short distance during an investigatory detention if that is consistent with the purposes of the investigation, does not unduly prolong the duration of the detention, and does not

7

otherwise turn the situation into the equivalent of a formal arrest." 44 Kan. App. 2d at 652. But our court did not rely on the transportation alone to reach its decision, instead acknowledging that it "must consider all of the facts in the case before it." 44 Kan. App. 2d at 653 (citing *State v. Thompson*, 284 Kan. 763, Syl. ¶ 20, 166 P.3d 1015 [2007]). Likewise, our inquiry is not based solely on the fact that Spear was transported to a law enforcement center, as he insists it must be.

In a similar vein, Spear asserts that an unlawful transport cannot be rendered lawful by establishing that an officer had probable cause before the transport occurs, based on this court's decisions in *Wonderly*, 38 Kan. App. 2d at 809 (reversing DUI conviction after concluding transportation of defendant to sheriff's department constituted unlawful arrest), and *City of Norton v. Schoenthaler*, No. 97,036, 2007 WL 2410122, at *1 (Kan. App. 2007) (unpublished opinion) (reversing and remanding for suppression of evidence obtained following unlawful transport of defendant). Put simply, we do not agree that these decisions stand for the proposition he recites. Instead, the outcomes of both cases ultimately turned on determinations that (1) transport to a law enforcement center under the circumstances was the equivalent of an arrest; and (2) probable cause was lacking *before* the transport, rendering the transportation—the arrest—unlawful.

In *Homeier v. Kansas Dept. of Revenue*, our court reinforced the steps involved in analyzing an officer transportation case like this one. No. 117,611, 2018 WL 2073518 (Kan. App. 2018) (unpublished opinion). First, we must determine whether Spear was under arrest when transported, and if the answer is yes, then we must decide whether the officer had probable cause for arrest at the time of transport. See 2018 WL 2073518, at *2-3. Here, because Spear frames his appeal by focusing on whether the transportation constituted a lawful arrest, he is necessarily challenging whether Trooper Sneath had probable cause to arrest him based on the information known before the transport occurred. As in *Homeier*, we find it unnecessary to decide whether Spear's arrest occurred at the time of transport or later. 2018 WL 2073518, at *3. For purposes of this

appeal, we will assume Spear was arrested when Trooper Sneath asked Spear to accompany him to the law enforcement center and proceed to examine the issue of probable cause.

Spear does not dispute that the encounter was lawful from the start, likely as a public safety stop when Trooper Sneath noticed a vehicle that had crashed alongside a highway at night while on routine patrol. Although a public safety stop is considered a warrantless seizure under the Fourth Amendment to the United States Constitution, it can be justified even when no civil or criminal infractions have occurred so long as the "'safety reasons are based upon specific and articulable facts.' [Citations omitted.]" *State v. McDonald*, 318 Kan. 486, 488, 544 P.3d 156 (2024). Spear also raises no objection to the fact that Trooper Sneath had him lie on the ground until EMS could arrive, although that too likely fell within the scope of a public safety stop. See *State v. Gonzales*, 36 Kan. App. 2d 446, 456, 141 P.3d 501 (2006) (recognizing that scope of a public safety stop allows an officer to "take appropriate action to render assistance or mitigate the peril").

Spear also concedes that the signs of impairment known to Trooper Sneath before the transport—heavily slurred speech, odor of alcohol, and admission to drinking alcohol—established reasonable suspicion to detain him for a DUI investigation. Yet, he contends, like our court found in *Wonderly* and *Schoenthaler*, this evidence was insufficient to support probable cause for a DUI arrest. In response, KDOR points out that both cases involved traffic stops and not a vehicular accident, offering this court's discussion of both cases in *Homeier* as a model to distinguish the cases. KDOR also provides *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 472 P.3d 92 (2020), as a more factually similar case. We briefly examine each, in which each defendant was transported for DUI testing at a separate location.

Beginning with *Wonderly*, our court determined that the admissible evidence of the defendant's impairment included that he initially disobeyed the officer's order to get

back into his truck, had bloodshot eyes and the odor of alcohol on his breath, and admitted to drinking earlier that evening. But we also noted that the officer did not observe the defendant committing any traffic violations and that he had no difficulty retrieving his driver's license or exiting his truck and was not slurring his speech. Given those facts, our court concluded that the "limited evidence . . . gathered at the scene of the traffic stop was insufficient to support probable cause for an arrest." 38 Kan. App. 2d at 808-09.

In *Schoenthaler*, the evidence of the driver's impairment included that he was seen speeding around midnight, smelled of alcohol, placed an item behind his seat as officers approached the vehicle, had open beer cans in his vehicle, and admitted to drinking about 30 minutes before driving. Although it was a "close question," a panel of our court determined probable cause was lacking at the time he was transported to the police station because Schoenthaler did not slur his speech, possess poor balance, or have bloodshot eyes, and did not commit any other traffic violations. 2007 WL 2410122, at *5.

Next, in *Homeier*, the evidence of the defendant's impairment included two speeding violations, taking longer than normal to pull over, smelling of alcohol, slurred speech, glassy and bloodshot eyes, difficulty exiting the vehicle, and exhibiting poor balance. Our court differentiated *Wonderly* and *Schoenthaler* in conducting the probable cause analysis, concluding that Homeier showed more signs of impairment than the defendants in the other cases. *Homeier*, 2018 WL 2073518, at *4-5.

Finally, in *Johnson*—the only case cited by either party on the issue of probable cause involving a single vehicle accident—a panel of our court found substantial competent evidence to support the district court's probable cause findings. There, the defendant had a "'very strong odor'" of alcohol noted by the officer and EMS, was weaving while walking, had bloodshot eyes, no apparent injuries, declined medical treatment, and provided an incorrect birth date to EMS. 58 Kan. App. 2d at 440. But

related to the accident itself, the court also noted the evidence supported the district court's probable cause determination because the defendant was involved "in an accident while it was still light outside, in which he missed a curve, overcorrected, and rolled into a ditch," the officers observed no skid marks, and Johnson had totaled his vehicle. 58 Kan. App. 2d at 440.

Under the circumstances Trooper Sneath encountered here, we find the trooper had direct signs of Spear's impairment—heavily slurred speech, odor of alcohol even in the strong winds, and admitting to drinking alcohol—which, standing alone, could be compared to the limited indicators present in *Wonderly* and *Schoenthaler*. But like in *Johnson*, we cannot ignore the one-car accident—during which Spear's vehicle crossed the roadway into an embankment with no apparent cause—that added to a reasonable inference that it was his impairment that caused the accident. Based on the totality of these circumstances, probable cause existed to believe Spear had committed DUI before the transportation occurred, making the transportation a lawful arrest.

As a final matter, we dispense with KDOR's alternative argument that Trooper Sneath could have lawfully arrested Spear under K.S.A. 8-1001(b)(1) for underage consumption combined with the fact that an accident had occurred. See *Bixenman v. Kansas Dept. of Revenue*, 49 Kan. App. 2d 1, 6, 307 P.3d 217 (2013) (upholding administrative suspension where facts showed arresting officers had reasonable grounds to believe underage driver was driving with alcohol in his system); see also K.S.A. 8-1567a(a) (legal limit of 0.02 for driver under 21 years old). Although KDOR correctly reads the statute as providing alternative grounds for requesting breath testing based on an officer's belief of certain facts, a review of the record on appeal confirms that the KDOR suspended Spear's driving privileges here based on an arrest under the general DUI statute and not the version applicable only to underage drivers. This distinction is borne out by the absence of markings in the appropriate checkboxes on the DC-27 form and the KDOR's administrative order, and despite Trooper Sneath's testimony at the

11

suppression hearing that he believed Spear was only 19 at the time of the incident and that he provided the notices alongside the standard implied consent advisory. Accordingly, we need not address KDOR's alternative argument because it was not a part of the district court's decision.

Affirmed.