NOT DESIGNATED FOR PUBLICATION

No. 110,577

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES RYAN BLOOM,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed May 6, 2016. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam:* In order to receive habeas corpus relief by way of a K.S.A. 60-1507 motion, a prisoner must show that his counsel's performance was deficient and that counsel's errors prejudiced his defense. Because James Ryan Bloom has proved neither, we affirm the district court's denial of relief.

1

*The case history provides a context for our analysis.*

Bloom is serving a prison sentence for rape, six counts of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior. His convictions were affirmed on direct appeal. *State v. Bloom*, No. 97,883, 2009 WL 743049 (Kan. App. 2009) (unpublished opinion), *rev. denied* 289 Kan. 1280 (2010).

In 2011, Bloom filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel during plea negotiations. The district court dismissed his motion and Bloom appealed. This court found that the district court failed to properly consider Bloom's claim that he had received ineffective assistance in considering whether to accept the State's offer of a plea agreement. This court reversed and remanded the case to the district court with directions to hold an evidentiary hearing to make findings under the holding in *Lafler v. Cooper*, 566 U.S. _____, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). The district court on remand took evidence on the matter and denied Bloom relief. He appeals that ruling.

In 2014, this court, at Bloom's request, remanded for an evidentiary hearing to address Bloom's claim of ineffective assistance of K.S.A. 60-1507 counsel. After the hearing, the district court once again denied Bloom relief. Bloom filed an amended notice of appeal, and the case was re-docketed.

In this appeal, Bloom abandons his claim of ineffective assistance of his K.S.A. 60-1507 counsel and instead limits his argument to challenging the district court's prior order denying him relief under *Lafler*. He argues his trial counsel provided ineffective assistance by improperly advising him of his chances of winning at trial and advising him about the applicability of two special sentencing rules. Bloom contends that if he had been better informed he would have never taken the case to trial.

Bloom's original K.S.A. 60-1507 motion was predicated primarily upon a claim that his trial counsel provided ineffective assistance during plea negotiations. In short, ignoring any terms regarding sentencing disposition or peripheral considerations, Bloom rejected seven plea offers ranging from two counts of aggravated indecent liberties with a child up to a final offer of six counts of aggravated indecent liberties with a child and one count of lewd and lascivious behavior in exchange for dismissing the rape charge. If Bloom had accepted the final plea offer, he faced a maximum potential sentence of 122 months in prison, *i.e.*, twice the base sentence of 61 months. See K.S.A. 2006 Supp. 21-4720(b)(4). Public defenders Sarah McKinnon and Kiehl Rathbun represented Bloom at his 2006 trial. Rathbun was later disbarred in October 2007 for reasons unrelated to the underlying case. See *In re Rathbun*, 285 Kan. 137, 169 P.3d 329 (2007).

In his brief, Bloom limits his arguments to challenging the district court's order finding that his trial counsel provided effective assistance and advice during plea negotiations. Bloom complains that he would have accepted a plea offer and not taken the case to trial if not for the deficient performance of trial counsel during plea negotiations. Specifically, he argues that he was prevented from making a knowing decision about the various plea offers because he was never advised of two special sentencing rules—K.S.A. 2006 Supp. 21-4720(b)(4) and K.S.A. 2006 Supp. 21-4720(c). He also avers that his trial counsel assured him that "the rape could not be proved and that the speedy trial issue was a winner on appeal."

*Our guiding principles in dealing with such questions are well established.*

Claims involving ineffective assistance of counsel constitute mixed questions of fact and law. *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). Consequently, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). In considering appeals after the district court has held an evidentiary hearing, we review the district

3

court's underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo. *Bowen*, 299 Kan. at 343.

Substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). Appellate courts do not reweigh evidence or reassess the credibility of the witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Instead, we must accept as true the inferences that support the trial court's findings. See *State v. Morton*, 286 Kan. 632, 641, 186 P.3d 785 (2008).

When alleging ineffective assistance of counsel the defendant must establish:  (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler*, 132 S. Ct. at 1384; *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012); *State v. Szczygiel*, 294 Kan. 642, 646, 279 P.3d 700 (2012). During plea negotiations, a defendant is entitled to the effective assistance of competent counsel. *Lafler*, 132 S. Ct. at 1384; *Szczygiel*, 294 Kan. at 646.

We must apply the standards set in *Lafler* when dealing with questions of ineffective assistance of counsel when a defendant rejects a plea offer and goes to trial. Under the performance prong of *Strickland*, a defendant must show that trial counsel's representation fell below an objective standard of reasonableness. *Lafler*, 132 S. Ct. at

1384. As a rule, trial counsel in the plea bargain process has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Frye*, 132 S. Ct. at 1408. This court's review of counsel's performance is highly deferential and requires consideration of all the evidence before the judge or jury. We must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

To establish prejudice under *Strickland*, a defendant must generally show there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. See *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014). However, in the context of pleas, the prejudice question under *Strickland* becomes whether a defendant can show that the outcome of the plea-bargaining process would have been different with competent advice. *Lafler*, 132 S. Ct. at 1384. When, as in the case here, the alleged ineffective advice or assistance led to the rejection of a plea offer, not its acceptance, the prejudice alleged is having to stand trial. See *Lafler*, 132 S. Ct. at 1385. In such circumstances,

> "[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385.

See *Frye*, 132 S. Ct. at 1409.

*How the special sentencing rules work.*

At that time, the sentencing judge could impose concurrent or consecutive sentences in multiple conviction cases such as Bloom's. See K.S.A. 2006 Supp. 21-4720(b). However, when consecutive sentences apply, the sentencing judge must establish a base sentence for the controlling crime, which is the crime with the highest severity ranking. K.S.A. 2006 Supp. 21-4720(b)(2). Here, Bloom's base crime was rape. The district court at the sentencing hearing ordered all eight aggravated presumptive sentences to be served consecutively, totaling 538 months. The district court then acknowledged that under the double rule the overall sentence would be capped at 330 months.

K.S.A. 2006 Supp. 21-4720(b)(4) is termed the "double rule" and controls the total sentence length in multiple conviction cases imposing consecutive presumptive sentences. See *State v. Peterson*, 22 Kan. App. 2d 572, 575, 920 P.2d 463, *rev. denied* 260 Kan. 1000 (1996). Under that statute, the total prison sentence for a case involving multiple convictions arising from multiple counts within a complaint cannot exceed twice the base sentence for the primary crime. K.S.A. 2006 Supp. 21-4720(b)(4). Thus, for Bloom, this would be twice the 165-month sentence for the rape conviction, for a total of 330 months.

The corollary "double-double rule" is found in K.S.A. 2006 Supp. 21-4720(c), the statute controlling consecutive departure sentences. See *Peterson*, 22 Kan. App. 2d at 575. K.S.A. 2006 Supp. 21-4720(c)(1) allows the sentencing judge to depart from a presumptive sentence within the context of consecutive sentences if aggravating factors are found. When a departure sentence is imposed for any of the individual crimes sentenced consecutively, the imprisonment term of that departure sentence cannot exceed twice the maximum presumptive imprisonment term for that crime. K.S.A. 2006 Supp. 21-4720(c)(2). In turn, the total controlling sentence may not exceed twice the maximum

departure sentence. K.S.A. 2006 Supp. 21-4720(c)(3). Here, Bloom's 165-month sentence for rape could have been departed to 330 months under K.S.A. 2006 Supp. 21-4720(c)(2). With this departure in hand, the seven remaining counts could then run consecutively, with the total imprisonment term of the remaining consecutive sentences not to exceed twice the maximum departure sentence, *i.e.*, 660 months.

Citing *State v. Williams*, 275 Kan. 284, 64 P.3d 353 (2003), Bloom argues that his lack of knowledge of the impact of the special sentencing rules on the potential sentences he faced is reversible error. Bloom's reliance on *Williams* is unpersuasive.

This case is not like *Williams*. *Williams* concerned a defendant moving to withdraw a plea prior to sentencing and the trial court's statutory duty under K.S.A. 2002 Supp. 22-3210 to advise the defendant, before accepting his or her guilty plea, of the maximum penalty that it could impose. The Kansas Supreme Court found that the trial court's misstatement at the plea hearing regarding the maximum sentence that could be imposed was a serious error sufficient to allow the defendant to withdraw his pleas. 275 Kan. at 290. *Williams* did not deal with whether trial counsel was deficient in allegedly failing to recognize and inform a defendant of the effects of the special sentencing rules, and its holding does not help Bloom's argument.

Second, the record supports that trial counsel properly counselled Bloom on both of the special sentencing rules and the corresponding impact they had on his possible sentence. Bloom does dispute the district court's finding that he was properly advised of the severity level and sentencing range for each charge against him, including the rape charge. McKinnon testified that she explained the sentencing ranges and double rule to Bloom if he was convicted of rape. McKinnon also testified that she discussed the final plea offer from the State and Bloom rejected it. The final plea offer clearly acknowledged that Bloom would benefit at sentencing from the double rule if he accepted the offer.

As for the double-double rule, the record supports that Bloom was aware of the implications of this special sentencing rule. On September 14, 2006, the State filed a motion seeking an upward durational departure sentence citing, in part, the fiduciary relationship between a parent defendant and child victim as an aggravating factor. See *State v. Ippert*, 268 Kan. 254, 260, 995 P.2d 858 (2000). McKinnon testified that she discussed the ramifications of that motion with Bloom and that he faced 660 months in prison. McKinnon also testified that she discussed the September 28, 2006, plea offer from the State with Bloom. That plea offer specified, in part, that the State would dismiss the pending departure motion. This would have limited Bloom's exposure to approximately 10 years in prison.

We find no error in denying Bloom relief on his claims regarding the lack of advice from trial counsel regarding the two special sentencing rules. We turn now to his claims of incorrect legal advice.

Bloom argues that the district court abused its discretion because the court in its June 19, 2013, order denying him relief never made any findings addressing the issue of incorrect legal advice from Rathbun assuring Bloom of his chances of success on the speedy trial issue on appeal and him not being convicted of the rape charge. Bloom asserts that because of this incorrect legal advice the district court should have followed "the law of *Lafler*" and addressed the issue of prejudice.

Indeed, the district court's order denying Bloom relief was based on the court's factual determination that there had been no deficient performance by his counsel, and not on prejudice. However, the failure to establish either *Strickland* prong is fatal to an ineffective assistance of counsel claim. *Chamberlain v. State*, 236 Kan. 650, 655, 694 P.2d 468 (1985). Therefore, we, like the district court, need not inquire into whether prejudice resulted from trial counsel's performance if we determine that it was not deficient. See *Strickland*, 466 U.S. at 697.

The district court denied Bloom relief on his K.S.A. 60-1507 motion after holding a full evidentiary hearing. Bloom did not object to the district court making inadequate findings of fact and conclusions of law. Therefore, he has failed to preserve any such complaint for appeal. See *State v. Edwards*, 290 Kan. 330, Syl. ¶ 5, 226 P.3d 1285 (2010). Moreover, the record does not rebut that presumption that the district court found all facts necessary to support its order. See *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

Moving to Bloom's argument, the district court found that "McKinnon did not misrepresent to [Bloom] the likelihood of a successful appeal on the speedy trial issue" or "lead [Bloom] to believe the State would not be successful in prosecuting [Bloom] if the victim failed to appear." In short, the district court found that Bloom did not receive incorrect legal advice. This finding is supported by substantial evidence.

A review of the record reveals that McKinnon testified that she had discussed with Bloom the strengths and weaknesses of the State's case against him but acknowledged that Rathbun "had the bulk of those conversations with [Bloom]." McKinnon testified that she discussed with Bloom the speedy trial related issues and the corresponding motion to dismiss. She acknowledged telling Bloom that he had a good speedy trial argument and that if he entered a plea he would waive any appeal issues but clarified that she "could not tell him with any degree of certainty what an appeal court would do" with the issue. McKinnon stated she believed that the speedy trial issue may have factored into Bloom's decision to reject plea offers.

Rathbun also testified that he had discussed with Bloom the strengths and weaknesses of the State's case. He summarized his discussion about the strengths of the State's case as follows:

9

"[T]he strength of their case depended on the availability of witnesses. And if you assume they had them available, and they were cooperative, they had an extremely strong case. If the witnesses were not available or were not cooperative in the sense they invoked their Fifth Amendment rights against incrimination and were not available to testify against Mr. Bloom, they had an extremely weak case."

Rathbun also considered any evidence of Bloom's confession strengthened the State's case.

In discussing the weaknesses of the State's case, Rathbun acknowledged that the victim was not available. He stated:

"I . . . recall that we talked about what would happen if she were found and brought to court, and I recall Mr. Bloom being very firm in his belief that she would not testify against him, and l recall us admonishing him that in our experience he needed to anticipate that might happen. We needed to plan for each eventuality and look at the merits of each."

Rathbun also testified he and McKinnon explained to Bloom that the speedy trial issue was complex and they could not predict an appellate court ruling on the issue. Rathbun testified he had no specific recollection of having discussed with Bloom the strength of the rape charge.

At the same evidentiary hearing, Bloom had the burden to raise those issues he believed he could establish by a preponderance of the evidence that would entitle him to relief under K.S.A. 60-1507. See K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2015 Kan. Ct. R. Annot. 271). Bloom recalled his conversations with trial counsel about the strengths and weaknesses of the State's case against him. He acknowledged having discussed the speedy trial issue and then stated, "I was told they can't prove a rape charge" because the victim "said it didn't happen." Bloom, however, subsequently offered

10

conflicting testimony when he stated he could not recall discussing "what the possible substance" of the victim's testimony would be. And during closing arguments, Bloom's K.S.A. 60-1507 counsel only argued that Bloom "was led to believe . . . that the case would be dismissed for [the] speedy trial issue" and the possibility that the victim would not show up to testify. Bloom's K.S.A. 60-1507 counsel did not argue Bloom received incorrect legal advice about the rape charge.

De novo review only extends to evaluating the legal conclusions the district court made at the first hearing based on its underlying factual findings that are supported by substantial competent evidence. See *Bowen*, 299 Kan. at 343. McKinnon and Rathbun's testimony, which the district court found to be more credible than Bloom's, provided substantial competent evidence to support both the district court's findings that Bloom's trial counsel's conduct did not fall below an objective standard of reasonableness and its decision to deny relief on this claim. In other words, the district court simply found Bloom's statement that trial counsel told him the rape charge could not be proved was not credible. On review, we do not reweigh testimony nor assess witness credibility in deciding if substantial competent evidence exists. See *Reiss*, 299 Kan. at 296.

Bloom has failed—as a matter of law—to establish trial counsel's performance was deficient. The district court did not err in denying Bloom's K.S.A. 60-1507 motion.

Affirmed.

11