Luckert, J., dissenting:
I dissent from the majority's conclusion that the evidence seized by Officers Megan *124 Larson and Jason Gross must be suppressed. While I agree with the majority's synthesis of the applicable law, I do not agree with its application of the law to the facts. I would hold that once officers initiated the encounter, a reasonably prudent officer would have been warranted in believing, because of specific and articulable facts, that Fran Amilcar Andrade-Reyes was armed and posed an immediate danger. Because of that belief, it was reasonable for officers to demand that Andrade-Reyes open his hand.
As the majority points out, several courts have recognized that an officer may conduct a search limited to the need for officer safety if, after initiating the encounter, the officer develops an objectively reasonable belief that the person is armed and poses an immediate danger, even if the officer lacked probable cause or a reasonable suspicion. See, e.g., United States v. Ellis , 501 F.3d 958 (8th Cir. 2007) ; State v. Mann , 271 Conn. 300, 857 A.2d 329 (2004) ; People v. Colyar , 374 Ill.Dec. 880, 996 N.E.2d 575 (2013) ; Commonwealth v. Stephens , 451 Mass. 370, 885 N.E.2d 785 (2008) ; see also 4 LaFave, Search & Seizure § 9.6(a). This general principle finds support by extension of United States Supreme Court caselaw to these facts.
The assessment of reasonableness begins with considering the "governmental interest which allegedly justifies official intruding upon the constitutionally protected interest of the private citizen." Camara v. Municipal Court , 387 U.S. 523, 534-35, 87 S. Ct. 1727, 18 L.Ed. 2d 930 (1967). The United States Supreme Court identified the interest at issue here in its decision in Terry v. Ohio , 392 U.S. 1, 88 S. Ct. 1868, 1881, 20 L.Ed. 2d 889 (1968), when it stated:
"[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. 1868.
Ultimately, the Terry Court permitted "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." 392 U.S. at 27, 88 S.Ct. 1868. Terry limited this rule to investigative detentions, but it does not offend the Fourth Amendment's notion of reasonableness to extend this rule to situations in which objective concerns for officer safety arise in the midst of a consensual encounter. After all, the officer engaged in a consensual encounter is in a situation allowed by the Fourth Amendment.
The majority declined to discuss or consider the possibility this exception could apply here because it held Officer Larson's action exceeded the scope of what was necessary to satisfy officer safety concerns. Op. at 122 (citing State v. Reiss , 299 Kan. 291, 301, 326 P.3d 367 [2014] ). Certainly, because the exception must be "narrowly drawn," Terry , 392 U.S. at 27, 88 S.Ct. 1868, courts should carefully examine whether an officer's actions are reasonable. But Terry stated that an officer should be "entitled to draw from the facts in light of his experience." 392 U.S. at 27, 88 S.Ct. 1868. And the Court recognized officers must take "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat." 392 U.S. at 20, 88 S.Ct. 1868.
The majority, however, gives little credence to the officers' on-the-spot evaluation and engages in an exercise of Monday morning quarterbacking. Removed from the stress of the encounter, the majority concludes the officers could have simply told Andrade-Reyes to keep his hands in sight while they left. But it was late at night and dark, and the officers testified they had difficulty seeing into the car. Their bicycles were parked some distance away and offered no protection. And the officers testified this was a high crime area. Given those circumstances, it seems unreasonable to me to expect officers *125 to walk away from someone they suspected might have ammunition and who had earlier reached toward the floorboard of the car where a gun could easily have been hidden. The officers' actions in demanding Andrade-Reyes show what was in his hands was a minimal intrusion given the weighty interest in officer safety. See Reiss , 299 Kan. at 301, 326 P.3d 367.
Certainly, an officer's good faith is not enough, and courts must exercise detached, neutral scrutiny by applying an objective standard to the facts. Terry , 392 U.S. at 21-22, 88 S.Ct. 1868. Here, the district judge did just that. The judge had the opportunity to hear the testimony of the officers and to view the body camera footage. We did not. Based on the testimony and evidence, the judge found the officers "were very concerned." The record suggests the facts available to the officers would warrant a reasonably cautious person to believe that ordering Andrade-Reyes to reveal what he had in his hand was an appropriate action for officer safety purposes. And that action was a limited intrusion reasonable under the circumstances.
I would affirm the district court and the Court of Appeals.