NOT DESIGNATED FOR PUBLICATION

No. 121,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STACEY L. MEEKS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 16, 2020. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Andrew R. Davidson*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.


PER CURIAM: A jury convicted Stacey Meeks of possession of methamphetamine, possession of drug paraphernalia, and interference with law enforcement. She now appeals these convictions, claiming the district court should have suppressed evidence found as a result of an unlawful seizure and search. After reviewing the parties' arguments, we conclude the district court did not err in denying Meeks' motion to suppress. We therefore affirm her convictions.

1

During an April afternoon in 2018, Joey Cross was driving a gray Camaro on K-14 in Reno County. His girlfriend, Meeks, was a passenger. Kansas Highway Patrol Trooper Matthew Peil observed the Camaro speeding at 82 miles per hour in a 65-miles-per-hour zone. Peil turned his vehicle around and activated his lights and siren to initiate a traffic stop. He noted that the driver was a white male with facial hair wearing a gray shirt. The Camaro accelerated, and a high-speed chase ensued, with the Camaro and the patrol car reaching speeds in excess of 140 miles per hour.

Peil followed the Camaro down a gravel driveway that ended by a partial fence (that had been driven over by the Camaro) and what appeared to be a junk yard, with multiple vehicles and various outbuildings. When Peil arrived, he saw Cross standing next to the driver-side door and Meeks standing on the passenger side. Cross then took off running.

Meeks did not run. Instead, she continued to stand outside the Camaro. Peil asked her where the driver went. Meeks said that she did not know where the driver had gone; she also told Peil she was the driver. Peil informed her that he had observed a male with facial hair driving the vehicle and had seen him get out of the Camaro and stand next to the car. Peil placed Meeks in handcuffs, and he and other law enforcement officers began to search the property for the driver.

Deputies from the Reno County Sheriff's Department later found Cross walking down a nearby road. He was placed under arrest and brought back to the junk yard. Another deputy then searched Cross and placed him in a patrol car.

Peil returned to Meeks, who remained handcuffed, and walked her toward another patrol car. Before he placed her in the vehicle, Peil searched her. At Meeks' subsequent

2

trial, Peil explained that the reason for searching a person before putting him or her in an officer's patrol car was "officer safety"—that is, "to make sure they don't have weapons on them, any other harmful objects." Peil thus patted down Meeks. When doing so, he first patted down her pants and then lifted her shirt to expose the waist of her pants. Peil explained his search as follows:

> "I always pat down females with the back of my hand on their pockets. I always ask them do you have anything on you that's going to cut me, poke me, or stick me. [Meeks] advised she didn't. I think she had tight jeans on that day, not exactly sure how I searched her pockets, but with every female I always give them a warning, I'm going to lift your shirt shortly above your waistband. That's a common place where weapons are kept and, like I said, it's officer safety."

Peil explained that the purpose for lifting Meeks' shirt so he could view her waistband was that the waistband is "a place people commonly keep weapons, any knife, any guns, any guns these days are very small and very thin."

When the trooper lifted Meeks' shirt, a clear plastic baggie that had been stuck to her stomach fell. The baggie contained a white crystalline substance, later determined to be methamphetamine.

The State charged Meeks with possession of methamphetamine, possession with intent to use drug paraphernalia, and interference with law enforcement. Meeks filed a motion to suppress, arguing Peil's detention of her at the junkyard (which she alleged was an arrest) and his subsequent search for weapons violated her right to be free from unreasonable searches and seizures. And she argued that the scope of that search—lifting her shirt to reveal her waistband—was also unreasonable because a pat-down search could have been less intrusive but just as effective in searching for weapons.

The court denied Meeks' suppression motion. Though the court found Peil lacked probable cause to arrest Meeks for *actually* obstructing an investigation under K.S.A. 2019 Supp. 21-5904(a)(3) at the time she was placed in handcuffs, it nevertheless found there was probable cause to believe Meeks had *intended* to impede or obstruct the investigation under K.S.A. 2019 Supp. 21-5904(a)(1)(C). The court alternatively ruled that Meeks' temporary detention—being placed in handcuffs while the officers searched for Cross—was a permissible *Terry* stop. Finally, the court found that Peil's subsequent search for weapons was permissible and that lifting Meeks' shirt to visually inspect her waistband was "unobtrusive, even more so than a pat down of a female by a male officer."

The case proceeded to a jury trial, where Meeks was found guilty of all charges. She now appeals, claiming the district court should have granted her motion to suppress.

DISCUSSION

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010).

Whenever an officer encounters a citizen in a public place, the rights protected by the Fourth Amendment are implicated. The rules of law applied to safeguard the Fourth Amendment's protections vary depending on the type of encounter between the individual and law enforcement. Kansas courts have recognized four types of such encounters: (1) voluntary encounters; (2) investigatory detentions; (3) public safety stops; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

4

An investigatory detention—also known as a "*Terry* stop" after *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)—occurs when an officer detains a person in a public place because the officer reasonably suspects the person "is committing, has committed or is about to commit a crime." K.S.A. 22-2402(1); see *Terry*, 392 U.S. at 21-22; *State v. Thomas*, 291 Kan. 676, Syl. ¶ 8, 246 P.3d 678 (2011). A reasonable suspicion is "a particularized and objective basis for suspecting the person stopped is involved in criminal activity." 291 Kan. 676, Syl. ¶ 9. Reasonableness in this context is viewed "'based on the totality of the circumstances'" and "'in terms as understood by those versed in the field of law enforcement.'" 291 Kan. at 687 (quoting *State v. Moore*, 283 Kan. 344, 354, 154 P.3d 1 [2007]).

Whether reasonable suspicion exists is a question of law. *Thomas*, 291 Kan. at 688. Reasonable suspicion is a less rigorous standard than probable cause and requires a showing considerably less than preponderance of the evidence. *State v. Johnson*, 293 Kan. 1, 6, 259 P.3d 719 (2011). But the standard requires more than an inchoate and unparticularized suspicion or hunch of criminal activity. 293 Kan. at 6 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 [2000]).

In contrast, an arrest requires an officer to have a warrant for the person's arrest, probable cause to believe there is such a warrant, or probable cause to believe the person is committing or has committed a crime. See K.S.A. 22-2401. A person is deemed to be under arrest when he or she is physically restrained or submits to the officer's custody after committing a crime. K.S.A. 2019 Supp. 22-2202(d); K.S.A. 22-2405(1). An arrest must be tied to the person's commission of a certain crime as opposed to any other reason, such as officer safety.

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de

novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the material facts are not in dispute—as here—whether evidence should be suppressed is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57, 21 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. *Cleverly*, 305 Kan. at 605.

Meeks states that her initial detention—when she was handcuffed as the officers continued to search for Cross—was an arrest effected without probable cause to believe she had committed a crime. But the district court found there was probable cause to arrest Meeks when she was placed in handcuffs because her delusive responses to Trooper Peil's questions evinced an intention to interfere with the officers' ongoing investigation, a crime under K.S.A. 2019 Supp. 21-5904(a)(3). The court also found that, regardless of whether Peil had probable cause to arrest Meeks when she was handcuffed, that seizure was a permissible investigatory detention, and the subsequent search was reasonable to ensure the officers' safety before Meeks was placed in the patrol car.

Meeks does not explain her conclusory statement that the detention was an arrest, not an investigatory detention, or cite to any supporting facts in the record to support her assertion. We note that the video recording of the incident was played for the jury, and a transcript of that recording was offered into evidence, but neither are part of the record on appeal. Accord *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015) (appealing party has a duty to designate a record).

Meeks appears to conclude that she was arrested because she was handcuffed. But the law recognizes that law enforcement officers are "permitted to use precautionary measures that are reasonably necessary to safeguard their personal safety." *State v. Blackston*, No. 109,684, 2014 WL 4995842, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1012 (2015). Thus, the use of handcuffs does not

6

"necessarily convert an investigatory detention into an arrest." *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006). And during the course of an investigatory detention, an officer "is allowed to frisk the person seized for weapons if necessary for the officer's personal safety." 281 Kan. at 141; see K.S.A. 22-2402(2). Instead, the controlling inquiry for determining whether a seizure was an arrest or an investigatory detention is "what a reasonable person would believe under the totality of the circumstances surrounding the incident." 281 Kan. at 145.

Under the facts of this case, Trooper Peil observed Cross driving a vehicle at an extremely high rate of speed and then flee from law enforcement on foot. He knew Meeks had been a passenger in the car and was being intentionally uncooperative with him in his efforts to locate the driver. Once the vehicles were stopped, the encounter occurred in a junk yard, where the officers were surrounded by numerous vehicles, buildings, and other obstructions. Considering the totality of the circumstances, we agree with the district court that it was reasonable for Peil to detain Meeks—including by placing her in handcuffs—for safety reasons as the pursuit of Cross continued.

Likewise, the subsequent search of Meeks before placing her in the patrol car was also reasonable to protect the safety of the officers. Peil testified about the importance of ensuring that a person does not have weapons before placing him or her in a vehicle to be driven by a law enforcement officer—a matter recognized in our caselaw. See, e.g., *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (upholding *Terry* stop where officer ordered defendant out of the car at gunpoint and handcuffed him before searching him for weapons), *rev. denied* 249 Kan. 777 (1991).

Meeks argues that even if this search were permissible in theory, the manner in which it was conducted was unreasonable. She asserts that rather than lifting her shirt to see her waistband, Peil should have conducted a pat-down frisk for weapons. But after reviewing the evidence presented at her hearing on Meeks' motion to suppress, the

district court found that Peil's search of Meeks—including lifting her blouse so the trooper could observe the waistband of her pants to ensure she was not armed—was "unobtrusive, even more so than a pat down of a female by a male officer." While we do not have the benefit of observing the video recording of this encounter, Peil's testimony at trial supports the district court's finding. See *Reiss*, 299 Kan. at 296 (appellate courts defer to district courts' factual findings if they are supported by substantial competent evidence).

Under the facts of this case, Trooper Peil's seizure of Meeks was a permissible investigatory detention, and his subsequent search of her person for weapons was reasonable and justified to protect the safety of the officers. Since we conclude the seizure and subsequent search were permissible on these grounds, we need not determine whether the seizure was also supported by probable cause that Meeks had intended to interfere with the ongoing investigation. The district court did not err in denying Meeks' motion to suppress the evidence resulting from the trooper's search.

Affirmed.